UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PROVIDERS ACCESS AND
SAVING SYSTEM, INC. and
MEDADVANTAGE, L.L.C.,

       Plaintiffs,

v.                                  Case No. 06-15367
                                  Honorable Patrick J. Duggan

THE REGENCE GROUP, INC.,
REGENCE BLUESHIELD OF IDAHO,
REGENCE BLUECROSS BLUESHIELD
OF OREGON, REGENCE BLUECROSS
BLUESHIELD OF UTAH, REGENCE
BLUESHIELD, ASURIS NORTHWEST HEALTH,
and BLUE CROSS BLUE SHIELD ASSOCIATION,

       Defendants.
_____/

**OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on April 12, 2007.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
                U.S. DISTRICT COURT JUDGE

Plaintiffs filed this lawsuit against Defendants, alleging infringement of Plaintiffs'

MEDADVANTAGE trademarks.  Presently before the Court is a motion to dismiss filed

by Defendants The Regence Group, Regence BlueShield of Idaho, Regence BlueCross

BlueShield of Oregon, Regence BlueCross BlueShield of Utah, Regence BlueShield, and

Asuris Northwest Health (collectively the "Regence Defendants").[1]  In their motion, filed

pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Regence

Defendants contend that this Court lacks personal jurisdiction over them.  The motion has

been fully briefed by the parties.  On April 12, 2007, the Court issued a notice informing

the parties that it is dispensing with oral argument with respect to the motion pursuant to

Eastern District of Michigan Local Rule 7.1(e)(2).  For the reasons that follow, the Court

grants the motion.

## I.    Applicable Standard

When presented with a motion to dismiss for lack of personal jurisdiction, the

court "may decide the motion upon the affidavits alone; it may permit discovery in aid of

deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent

factual questions."  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)(citation

omitted).  The plaintiff always bears the burden of proving that personal jurisdiction

exists; however, the weight of the plaintiff's burden varies based upon the method the

court chooses to decide the motion.  *Id*.  Where the court decides the motion upon the

affidavits alone, the plaintiff must make only a *prima facie* showing of personal

jurisdiction to defeat the motion.  *Id*. (citations omitted).

---

[1]Defendant Blue Cross and Blue Shield Association ("BCBSA") filed a separate
motion to dismiss on January 17, 2007.  On March 26, 2007, BCBSA withdrew its motion
due to an agreement it reached with Plaintiffs that resolved Plaintiffs' claims against
them.  This Court entered a stipulated order dismissing BCBSA from this action on
March 27, 2007.

Additionally, where the motion is decided without an evidentiary hearing, the court reviews the pleadings and affidavits in the light most favorable to the plaintiff and does not consider the assertions of the party seeking dismissal which contradict those of the plaintiff. *Id.* at 1459. The court, however, is not required to "ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiff." *Kerry Steel v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997). Furthermore, "in the face of a properly supported motion for dismissal, the plaintiff may not stand on [its] pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458.

## II.     Factual and Procedural Background[2]

Plaintiff Providers Access and Saving System, Inc. ("PASS") is the owner of certain federally registered trademarks and common law trademarks referred to as the MEDADVANTAGE marks. (Compl. ¶ 32.) Plaintiff MedAdvantage LLC is the exclusive licensee of the MEDADVANTAGE marks. (*Id.* ¶ 34.) The MEDADVANTAGE marks are registered for "arranging for the discount purchase of health care related goods and services provided for others" and for "providing membership in a buying club which offers its members health care services and products

---

[2]This Court elects to decide the pending motion without an evidentiary. Accordingly, this section reflects the facts derived from the pleadings and affidavits as construed in a light most favorable to Plaintiffs, contains only the Regence Defendants' uncontroverted assertions, and assertions by Plaintiffs that are supported by affidavit or otherwise.

3

at discount prices." (*Id*. ¶ 33.) Through a program called "MedAdvantage," MedAdvantage LLC provides members with a card called the "MedAdvantage Card" which entitles the participants to receive point-of-sale discounts on prescription drugs, dental services, vision care services, diabetic supplies, foot care, and vitamins and nutritional supplements. (*Id*. ¶ 39.) Since at least 1995, PASS and MedAdvantage LLC (collectively "Plaintiffs") have sold memberships in MedAdvantage throughout the United States, including in Idaho, Washington, Oregon, and Utah. (*Id*. ¶ 40.)

Defendant The Regence Group, Inc. ("Regence Group") is a not-for-profit company incorporated in Oregon, with headquarters in Portland, Oregon. (*Id*. ¶ 5.) The Regence Group provides management services for affiliated health plans in the Pacific Northwest and Mountain state region. (Defs.' Mot., Hooker Decl. ¶ 3.) The health plans affiliated with the Regence Group are operated by the remaining Regence Defendants.[3] (*Id*. ¶ 4.)

Regence BlueShield of Idaho is incorporated and has its principal place of business in Idaho. (Compl. ¶ 9.) Regence BlueCross BlueShield of Oregon is incorporated and has its principal place of business in Oregon. (*Id*. ¶ 10.) Regence BlueCross and BlueShield Utah is incorporated and has its principal place of business in Utah. (*Id*. ¶ 11.) Regence BlueShield and Asuris Northwest Health are incorporated and have their principal places of business in Washington. (*Id*. ¶¶ 12 & 19.)

---

[3]Asuris Northwest Health is affiliated with the Regence Group as a subsidiary of Regence BlueShield. (Compl. ¶ 5.)

The Regence Group's affiliated companies operate as one company in the following four states, only: Oregon, Washington, Utah, and Idaho. (*Id*. ¶ 18; Defs.' Mot., Booker Decl. ¶ 4.) The companies have members, employees, and contracted service providers only in those four states. (Defs.' Mot., Booker Decl. ¶ 4.) They do not have any employees or contracted service providers in Michigan. (*Id*.)

The Regence Defendants, through the Regence Group's affiliated companies, operate medical insurance plans, marketed to Medicare recipients, named or referred to as "MedAdvantage" and "MedAdvantage + Rx." (Compl. ¶¶ 62-64.) These plans were started on July 1, 2005, in response to the Medicare Prescription Drug, Improvement, and Modernization Act of 2003. (Defs.' Mot., Lee Decl. ¶ 3.) As part of that Act, Congress changed the name of the "Medicare+Choice" program to "Medicare Advantage" and authorized insurers, upon approval by the Centers for Medicare and Medicaid Services ("CMS"), to offer regional health plans on a preferred provider organization model to supplement coverage to Medicare recipients. (*Id*. ¶¶ 3-4.) CMS has granted the Regence Defendants approval to offer Medicare Advantage plans only in specific counties within Oregon, Washington, Idaho, and Utah, and only to residents within those service regions. (*Id*. ¶¶ 4 & 9-13.)

The Medicare Advantage plans offered by the Regence Group's affiliates provide members with health coverage that supplements Medicare. (*Id*. ¶ 5.) Members receive cards, which they present to their health care provider or pharmacist, along with other health insurance information, when seeking medical services or products. (*Id*.) The cards

5

contain the name of the plan in which the member is enrolled– i.e. MedAdvantage or MedAdvantage + Rx. (*Id*. ¶ 6 & Ex. A.) Members traveling outside of the four-state service area requiring medical attention must present their card each time they seek medical services from an out-of-area provider. (*Id*. ¶ 6.) If a member in a Medicare Advantage plan remains outside the area serviced by the plan provider for more than six months, CMS rules require the plan to terminate the member's coverage. (*Id*. ¶ 7.)

The Regence Group's affiliates maintain Internet websites on which they advertise and market their insurance products and provide access to informational brochures about those products. Accordingly, the affiliates' websites refer to the MedAdvantage and MedAdvantage + Rx plans by name. (Compl. Exs. 6-20.) The Regence Group maintains an Internet website that contains links to its affiliates' sites.

Plaintiffs initiated this lawsuit on December 1, 2006, asserting that the above uses of their MEDADVANTAGE marks by Defendants constitute trademark infringement, trademark dilution, and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051 *et. seq*. Plaintiffs further allege that Defendants' conduct constitutes common law trademark infringement. The Regence Defendants filed the pending motion to dismiss on January 17, 2007.

In their motion, the Regence Defendants argue that they lack sufficient contacts with Michigan for the Court to exercise personal jurisdiction pursuant to Michigan's long-arm statute. They further contend that the Court's assertion of personal jurisdiction over them would violate the Due Process Clause of the U.S. Constitution. In their

6

response to the Regence Defendants' motion, filed on February 7, 2007, Plaintiffs argue that the Regence Defendants' activities are sufficient to subject them to suit in Michigan. Plaintiffs focus on the Regence Defendants' website activity and their development and sale of "insurance plans under the infringing [MEDADVANTAGE] marks . . . designed to provide insurance coverage outside the four-state area in which the plans are actually sold." (Pls.' Resp. Br. at 1.) The Regence Defendants filed a reply brief on February 23, 2007. With permission of the Court, Plaintiffs filed a sur reply brief on March 2, 2007.

**III.    Discussion**

Where a plaintiff alleges a violation of a federal statute, personal jurisdiction over the defendant exists "'if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process.'" *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003)(quoting *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)). The two inquiries merge, however, where the state's long-arm statute extends to the limits of the Due Process Clause of the U.S. Constitution. *Id.* As the Michigan Supreme Court has construed the state's long-arm statute as bestowing the broadest possible grant of personal jurisdiction consistent with due process, *see Mich. Coal. of Radioactive Material Users, Inc. v. Greipentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992), this Court will turn immediately to the question of whether exercising personal jurisdiction over the Regence Defendants is consistent with federal due process requirements.

Due process requires the plaintiff to have minimum contacts with the forum

7

sufficient to comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945). Three criteria must be met in order to find that a non-resident defendant has maintained sufficient contacts with the forum to support personal jurisdiction:

> "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Bridgeport Music*, 327 F.3d at 477-78 (quoting *Southern Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968)). Because the Court finds that the Regence Defendants have not purposefully availed themselves of the privilege of acting in Michigan or causing a consequence in Michigan, it will not address the second and third requirements.

"Purposeful availment is something akin to a deliberate undertaking to do or cause an act or thing to be done in [the forum state], something more than a passive availment of [the state's] opportunities." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891 (6th Cir. 2002)(internal citation and quotation marks omitted). Thus "[j]urisdiction is proper . . . where the contacts proximately resulted from actions by the defendant *himself* that creates a 'substantial connection' with the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75, 105 S. Ct. 2174, 2183-84 (1985)(emphasis in original). In other words, "[w]here a defendant 'deliberately' has engaged in significant activities

8

within a State or has created 'continuing obligations' between himself and residents of the

forum, he manifestly has availed himself of the privilege of conducting business there."

*Id*. at 476, 105 S. Ct. at 2184.  In contrast, jurisdiction is not proper where the defendant's

contacts with the forum are "random," "fortuitous," or "attenuated," or a result of the

"unilateral activity of another party or a third person."  *Id*. at 475, 105 S. Ct. at 2183

(citations omitted).

### A.        Stream of Commerce Plus Doctrine

Plaintiffs argue that the Regence Defendants meet the requirements for purposeful

availment under the "stream of commerce 'plus'" theory, which Justice O'Connor

articulated in her plurality opinion for the United States Supreme Court in *Asahi Metal*

*Industries Co. v. Superior Court of California*, 480 U.S. 102, 107 S. Ct. 1026 (1987), and

which the Sixth Circuit adopted in *Bridgeport Music*, 327 F.3d at 480.  Pursuant to this

theory, "[t]he placement of a product into the stream of commerce, without more, is not

an act of the defendant purposefully directed toward the forum State."  *Id*. at 112, 107 S.

Ct. at 1032.  The court must look to "[a]dditional conduct" of the defendant "indicat[ing]

an intent or purpose to serve the market in the forum State . . ."  *Id*.  As examples of

additional conduct satisfying the "plus" factor, Justice O'Connor provided: "designing the

product for the market in the forum State, advertising in the forum State, establishing

channels for providing regular advice to customers in the forum State, or marketing the

product through a distributor who has agreed to serve as the sales agent in the forum

State."  *Id*.  "[A] defendant's awareness that the stream of commerce *may* or will sweep

the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id.* (emphasis added).

Citing *Fortis Corporate Insurance v. Viken Ship Management*, 450 F.3d 214 (6th Cir. 2006), Plaintiffs contend that the stream of commerce plus test is satisfied "when a corporation designs a product that it knows will be used outside its home state . . ." (Pls.' Resp. Br. at 10-11.) Plaintiffs, however, state the holding in *Fortis* too broadly. In fact, as indicated above, the Supreme Court specifically rejected Plaintiffs' contention in *Asahi*. *See* 480 U.S. at 112, 107 S. Ct. at 1032 (finding that due process requires more than the "defendant's awareness that the stream of commerce may or will sweep [its] product into the forum State . . ."). The Sixth Circuit instead held in *Fortis* that due process would not be offended by an Ohio court's assertion of personal jurisdiction over the defendants– two Norwegian companies that owned and managed a vessel holding cargo damaged as it was carried through the Great Lakes en route from Poland to Ohio– because the defendants rigged their vessels to ship products specifically to ports in the Great Lakes. 450 F.3d at 222. As well, the defendants entered into a long-term agreement with a charterer that made its money shipping into the Great Lakes and they confirmed in that agreement that the vessel at issue in the lawsuit was "'suitable for Toledo.'" *Id.* at 221.

Unlike the defendants in *Fortis*, the Regence Defendants did not design their MedAdvantage and MedAdvantage + RX plans for use specifically in Michigan and they

10

did not into an agreement requiring the product to be used or sold specifically in Michigan.  To the contrary, the Regence Defendants are licensed to enter into insurance contracts with residents only of specified counties in Utah, Oregon, Washington, and Idaho.  While CMS rules allow an insurer to provide coverage to a member traveling outside the insurer's service area for up to six months, there is no certainty that any member will travel to another state or to a specific state.  Thus, unlike the pharmaceutical manufacturer in *Tobin v. Astra Pharmaceutical Products, Inc.*, 993 F.2d 528, 543 (6th Cir. 1993)– another case on which Plaintiffs rely– the Regence Defendants do not deliberately send their products into Michigan.  If coverage for medical care in Michigan is sought under one of the Regence Defendants' insurance plans– and Plaintiffs offer no proof that any request for coverage in Michigan has been made[4]– it is due to a member's decision to travel to the forum.  While it is foreseeable that one of the Regence Defendants' members might travel to Michigan, "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S. Ct. 559, 566 (1980).

Plaintiffs also argue that the contractual mechanisms which enable subscribers of the Regence Defendants' plans to use their insurance cards in other states provides the

---

[4]The Regence Defendants indicate that they know of only one person currently residing in Michigan known to be covered under one of their MedAdvantage plans, specifically Regence BlueShield's MedAdvantage plan.  (Defs.' Mot., Lee Decl. ¶ 8.) However contrary to Plaintiffs' assertion (*see* Pls.' Resp. Br. at 12), there is no evidence that this subscriber or any other subscriber to the Regence Defendants' plans received insurance benefits in Michigan.

"more" necessary to satisfy the stream of commerce plus theory. Plaintiffs, however, present no evidence to support their assertion that such contractual mechanisms exist. Moreover, Plaintiffs do not claim that the Regence Defendants are actual parties to these contracts or, if they are, whether any contract is with a Michigan entity, or how the contractual mechanisms work. For these reasons, the Court cannot conclude that contractual mechanisms demonstrate a "deliberate decision" by the Regence Defendants to market or insert their products in Michigan.

### B.    Effects Test

Plaintiffs alternatively argue that the purposeful availment requirement is satisfied under the "effects" test adopted by the Supreme Court in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482 (1984). In *Calder*, a professional entertainer filed a libel action in California against the writer of an article published in the *National Enquirer* and the president and editor of the newspaper. *Id*. at 784-86, 104 S. Ct. at 1484-85. Although finding that the defendants lacked sufficient contacts with the forum to establish general jurisdiction, the California Court of Appeals concluded that "a valid basis for jurisdiction existed on the theory that [the defendants] intended to, and did, cause tortious injury to the [plaintiff] in California." *Id*. at 787, 104 S. Ct. at 1485. The United States Supreme Court affirmed the California court's decision.

The Supreme Court agreed that the "effects" of the defendants' intentional tortious conduct– which the defendants could expect to be felt in California under the circumstances of the case– were sufficient for the California courts to exercise

12

jurisdiction over them.  *Id*. at 788-89, 104 S. Ct. at 1486-87.  As the Court explained:

> The allegedly libelous story concerned the California
> activities of a California resident.  It impugned the
> professionalism of an entertainer whose television career was
> centered in California.  The article was drawn from California
> sources, and the brunt of the harm, in terms both of [the
> plaintiff's] emotional distress and the injury to her
> professional reputation, was suffered in California.  In sum,
> California is the focal point both of the story and of the harm
> suffered.

*Id*.  Thus the Court concluded that the defendants "reasonably anticipate[d] being haled

into court [in California]" because they knew the article "would have a potentially

devastating impact upon [the plaintiff]" and that the "brunt of that injury would be felt by

[the plaintiff] in the State in which she lives and works and in which the *National

Enquirer* has its largest circulation."  *Id*.

Courts, including several judges in the Eastern District of Michigan, have

construed the Supreme Court's decision in *Calder* as setting forth three prerequisites

before the effects test applies.  First, the defendant must be charged with intentional

actions, rather than "'mere untargeted negligence.'"  *Ford Motor Co. v. Great Domains,

Inc.*, 141 F. Supp. 2d 763, 773-74 (E.D. Mich. 2001)(quoting *Calder*, 465 U.S. at 789,

104 S. Ct. at 1487); *Audi AG and Volkswagon of Am., Inc. v. D'Amato*, 341 F. Supp. 2d

734, 745 (E.D. Mich. 2004); *Visage Spa LLC v. Salon Visage, Inc.*, No. 06-10756, 2006

WL 2130512, at *8 (E.D. Mich. July 28, 2006)(unpublished opinion).  Second, the brunt

of the injury must have been felt in the forum state.  *Great Domains*, 141 F. Supp. 2d at

774; *Audi AG*, 341 F. Supp. 2d at 745; *Visage Spa*, 2006 WL 2130512, at *8.  Third, the

13

defendant's acts must have been expressly aimed at the forum state.  *Id.*  Plaintiffs argue that all three prerequisites are satisfied in this case.

First Plaintiffs argue that the Regence Defendants acted intentionally because they had actual knowledge or at least constructive knowledge of PASS' ownership of the MEDADVANTAGE marks due to PASS' federal registration of the marks and Plaintiffs' website at www.medadvantage.com.  Next Plaintiffs contend that because PASS is identified as a Michigan entity on its federal trademark registration, the Regence Defendants "clearly knew that PASS was based in Michigan and the brunt of any injury from trademark infringement would be felt in Michigan."  (Pls.' Sur Reply Br. at 4.) Finally Plaintiffs claim that because the Regence Defendants knew that PASS was based in Michigan and that therefore the brunt of the injury would be felt in Michigan, their activities were expressly aimed at Michigan.  (*Id.*)

As to the effects test's first prerequisite, Plaintiffs present no evidence to support their assertion that the Regence Defendants were aware of PASS' ownership of the MEDADVANTAGE marks.  The Regence Defendants, in comparison, present evidence indicating that the term "MedAdvantage" has become a generic, shorthand reference for the "Medicare Advantage" program Congress authorized in the Medicare Prescription Drug, Improvement, and Modernization Act of 2003.  (*See* Defs.' Mot., Exs. 1-5.)  But even if the Court assumes that the Regence Defendants had actual or constructive knowledge of PASS' ownership of the MEDADVANTAGE marks and deliberately infringed those marks, it does not believe that Plaintiffs make a *prima facie* showing that

14

the Regence Defendants' acts were "aimed at" Michigan based simply on that knowledge and Plaintiffs' presence in the forum.

The cases on which Plaintiffs rely with respect to the effects test suggest that something more is necessary to demonstrate that the defendant's actions were aimed at the forum state than use of a mark knowing that the owner of the mark lives in the forum. For example, the defendants in *Audi AG* and *Great Domains* registered Internet domain names that incorporated the well known trademarks of the plaintiffs whose headquarters were in Michigan. *Audi AG*, 341 F. Supp. 2d. at 739, 746; *Great Domains*, 141 F. Supp. 2d at 770, 771. Although finding it "highly unlikely" that the defendants in *Great Domains* negligently incorporated the plaintiff's marks into registered Internet domain names– in other words, finding that the defendants' infringement likely was intentional– Judge Cleland still found "difficult" the question of whether the defendants' actions were expressly aimed at the State of Michigan. 141 F. Supp. 2d at 774. In concluding that the effects test was satisfied in *Audi AG*, Judge Borman also found that the defendant operated an interactive website that allowed customers, including Michigan residents, to purchase infringing items. 341 F. Supp. 2d at 743.

Judge Cleland noted in *Great Domains* that "incorporating a famous mark into a domain name cannot always be deemed proof that registration of the domain name was expressly aimed at the trademark owner."[5] *Id*. at 775; *see also Audi AG*, 341 F. Supp. 2d

---

[5]As Judge Cleland further wrote:

15

at 746 (quoting *Panavision Int'l LP v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998))(indicating that "[i]n the internet context, 'simply registering someone else's trademark as a domain name and posting a website on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another.'") "For the 'effects doctrine' to apply, there needs to be 'something more' to demonstrate that the defendant directed his activity toward the forum state." *Audi AG*, 341 F. Supp. 2d at 746 (quoting *Panavision Int'l*, 141 F.3d at 1322).

In *Visage Spa*, Judge Borman also found that "something more" demonstrated purposeful availment than simply the defendant's knowing infringement of the plaintiff's mark. 2006 WL 2130512, at *9. Specifically, the court relied on the fact that the defendant sold gift certificates for its services on its Internet website and actually sold a gift certificate to a Michigan resident. *Id.* As Judge Borman held:

> . . . the sale of a gift certificate in Michigan was an intentional and deliberate sale outside of Tennessee, with full knowledge that the Mark was owned by another entity. Further, as stated above, Defendant Spa did not refuse to sell to Michigan residents and is presumed to have expressly aimed its acts at

---

> The majority of courts, . . . noting that a plaintiff always feels the effects of a legal injury in his home forum, have concluded that *Calder* should be applied with caution. . . . Because of the Internet's function as a widely-encompassing commercial network, information resource, and social forum, application of the 'effects' test to the misappropriation of protected marks as domain names raises particular difficulties.

*Great Domains*, 141 F. Supp. 2d at 774 (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 261 (3d Cir. 1998)).

the State of Michigan. . . .

*Id.*  Similarly, in finding the effects test satisfied in *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, the Eighth Circuit relied on the fact that the defendant's president "was 'sure'" that the defendant sold its infringing product to chains with retail outlets in the forum state and "the fact that there [was] at least some suggestion in the record that [the defendant] directly shipped to [the forum state]."  946 F.2d at 1391.

In the present case, the Regence Defendants used Plaintiffs' MEDADVANTAGE marks on their websites.  While Plaintiffs maintain that subscription forms for the Regence Defendants' allegedly infringing insurance plans can be downloaded from these websites, the Regence Defendants do not offer and are not licensed to offer these insurance programs to Michigan residents.  As a result, this Court cannot find that the Regence Defendants' websites are aimed at Michigan.[6]  While Plaintiffs' marks also are contained on insurance cards the Regence Defendants issue to their subscribers, those cards only find their way into Michigan– if they do at all– via the actions of the subscribers, not because of any deliberate act by the Regence Defendants.  Thus the Court finds no facts indicating that the Regence Defendants' actions were "expressly aimed at" Michigan.  Accordingly, the Court concludes that the elements necessary to apply the effects test are not satisfied.

------

[6]To the extent Plaintiffs are arguing that the Regence Defendants' inclusion of the marks on their websites alone satisfies the purposeful availment requirent, the Court finds such use insufficient. *See Great Domains*, 141 F. Supp. 2d at 772 (cases cited therein).

17

**IV.    Conclusion**

Based on the above, the Court concludes that Plaintiffs fail to make a *prima facie* showing that the Regence Defendants purposefully availed themselves of the privilege of acting in Michigan.  As a result, the Court holds that the assertion of personal jurisdiction over the Regence Defendants would violate due process.

Accordingly,

**IT IS ORDERED**, that the Regence Defendants' motion to dismiss due to lack of personal jurisdiction is **GRANTED**.


                                        s/PATRICK J. DUGGAN
                                        UNITED STATES DISTRICT JUDGE

Copies to:
J. Levin Weiner, Esq.
James J. Walsh
Suzanne D. Nolan, Esq.
Joseph A. Fink, Esq.
Kathleen A. Lang, Esq.